United States District Court
Southern District of Texas
**ENTERED**
June 08, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BILLY JOE JONES,                          §
                                          §
                    Plaintiff,            §
                                          §
v.                                        §      CIVIL ACTION NO. H-24-4679
                                          §
SPARROWS OFFSHORE, LLC and                §
MC OFFSHORE PETROLEUM, LLC,               §
                                          §
                    Defendants.           §

### MEMORANDUM OPINION AND ORDER

Billy Joe Jones ("Plaintiff") brought this action in the 61st Judicial District Court of Harris County, Texas, against Sparrows Offshore, LLC ("Sparrows") and MC Offshore Petroleum, LLC ("MCOP") (collectively referred to as "Defendants"), alleging that his injuries — suffered on August 9, 2024, during an operation involving a bridge plug on a well in Louisiana — were caused by Defendants' negligence.[1]  Defendants removed the action to this court.[2]  Pending before the court are Defendant Sparrows Offshore, LLC's Motion for Summary Judgment ("Sparrows' MSJ") (Docket Entry No. 25) and Defendant MC Offshore Petroleum, LLC's Motion for Final Traditional Summary Judgment and Incorporated Memorandum of Law

---

[1]Plaintiff's Original Petition and Jury Demand ("Original Petition"), Exhibit A-1 to Defendants' Joint Notice of Removal ("Notice of Removal"), Docket Entry No. 1-1, pp. 1, 4-5.  All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2]Notice of Removal, Docket Entry No. 1, p. 1.

("MCOP's MSJ") (Docket Entry No. 26).  For the reasons explained below, Sparrows' MSJ and MCOP's MSJ will be granted.

## I.  Background

On November 5, 2024, Plaintiff filed this action against Sparrows and MCOP in the 61st Judicial District Court of Harris County, Texas.[3]  On November 26, 2024, Defendants removed the action to this court.[4]

Sparrows and MCOP have each filed a motion for summary judgment.[5]  Plaintiff has filed a response and Defendants have filed replies.[6]

## A.  The Platform's Operations

MCOP owned and operated an offshore platform that was affixed to the Outer Continental Shelf offshore Louisiana in Green Canyon Block 184.[7]  An MCOP representative was in charge of the platform.[8]

---

[3]Original Petition, Exhibit A-1 to Notice of Removal, Docket Entry No. 1-1, p. 1.

[4]Notice of Removal, Docket Entry No. 1, p. 1.

[5]Sparrows' MSJ, Docket Entry No. 25; MCOP's MSJ, Docket Entry No. 26.

[6]Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 29; Defendant MC Offshore Petroleum, LLC's Reply to Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment ("MCOP's Reply"), Docket Entry No. 30; Defendant Sparrows Offshore, LLC's Reply to Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment ("Sparrows' Reply"), Docket Entry No. 32.

[7]MCOP's MSJ, Docket Entry No. 26, pp. 6–7.

[8]Jarred Henry Deposition ("Henry Depo"), Exhibit 3 to MCOP's MSJ, Docket Entry No. 26-3, p. 26 line 12 thru p. 27 line 12.

-2-

MCOP employed Crescent Energy ("Crescent") and Sparrows as independent contractors on the platform.[9] The MCOP/Crescent Master Service Contract ("MSC") stated that (1) "the actual performance and superintendence of all work . . . shall be by [Crescent],"[10] (2) "[Crescent] shall act as and be an Independent Contractor free and clear of any dominion or control by [MCOP] in the manner in which said services are to be performed,"[11] (3) "[Crescent] is required to furnish or have his employees, if any, furnish necessary tools, supplies, or materials to perform the work of service,"[12] and (4) "[Crescent] shall be solely responsible for compliance with all rules and regulations."[13]

At all times relevant to this action, Plaintiff was employed by Crescent.[14]

### B.  Plaintiff's Injury

On August 8 and 9, 2024, Crescent and Sparrows' employees were plugging and abandoning various oil and gas wells that tied into MCOP's platform.[15]  Plugging and abandoning the well involved

---

[9]MCOP's MSJ, Docket Entry No. 26, pp. 6–7; Sparrows' MSJ, Docket Entry No. 25, p. 9.

[10]Master Service Contract – Crescent Energy Services, LLC, Exhibit 4 to MCOP's MSJ, Docket Entry No. 26-4, p. 5 ¶ 4.1.

[11]Id. ¶ 4.2.

[12]Id. ¶ 4.2(c).

[13]Id. ¶ 3.1.

[14]Deposition of Billy Joe Jones ("Jones Depo"), Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 36 lines 13–18.

[15]Id. at 59 lines 4–16.

pulling the joints of tubing from the well, preparing the bridge plug, and running the bridge plug down the well on a wireline to set it and seal the well.[16]  The wireline, which is connected to a crane, moves the plug up and down, while the crane moves the plug left and right.[17]

The Crescent day crew spent all of August 8, 2024, pulling tubing from the well.[18]  At 6:00 p.m. that day, the Crescent night crew, which was made up of Plaintiff (rigger), George Peoples (rigger), Larry Magee (pump operator), and Anthony Blake Sonnier (wireline operator), took over the platform.[19]  While on deck, the crew reported to Magee.[20]  A crane operator employed by Sparrows was also a part of the crew.[21]

Before the night crew began working on the deck they were given two separate job safety analyses ("JSAs"), one for the crane work and one for the bridge plug setting operations.[22]  Jarred Henry, a

---

[16]Id.

[17]Id. at 102 lines 20-23; Anthony Blake Sonnier Deposition ("Sonnier Depo"), Exhibit 5 to MCOP's MSJ, Docket Entry No. 26-5, p. 43 lines 3-13 and 22-25, p. 53 lines 8-15.

[18]See Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 59 lines 4-6.

[19]Id. at 41 line 12 thru p. 43 line 14, p. 44 lines 4-12.

[20]Id. at 42 lines 11-18.

[21]Id. at 46 line 21 thru p. 47 line 4, p. 48 line 14 thru p. 49 line 10.  Plaintiff alleges that the crane operator on this crew had been operating the crane in an unsafe manner during previous night shifts and that "[e]verybody was talking about him."  Id. at 48 lines 14-19, p. 72 lines 10-24.

[22]Henry Depo, Exhibit 3 to MCOP's MSJ, Docket Entry No. 26-3, p. 24 line 7 thru p. 25 line 1.  It is unclear whether the crane work JSA was Sparrows' or Crescent's.  Id.

Crescent employee, conducted a pre-safety meeting for the whole crew, including the crane operator.[23] At the meeting Henry discussed the JSAs with the crew.[24] Henry also discussed the step-by-step process for plugging the well.[25] The parties dispute whether Henry discussed previous safety issues with the crane operator during the pre-safety meeting.[26] A representative from MCOP was also present at the meeting.[27] He told the crew to "work safe" and that they needed to "plug the well when [they were] finished pulling the pipe."[28] However, the MCOP representative was no longer present when the night crew began their work on the deck.[29]

At the start of their shift the Crescent night crew finished pulling the remaining tubing from the well.[30] The parties dispute

---

[23]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 51 line 21 thru p. 53 line 22.

[24]Id. at 65 line 15 thru p. 67 line 24.

[25]Id.

[26]Id. at 72 lines 10-14; Henry Depo, Exhibit 3 to MCOP's MSJ, Docket Entry No. 26-3, p. 59 lines 17-23; Sonnier Depo, Exhibit 5 to MCOP's MSJ, Docket Entry No. 26-5, p. 42 lines 6-9.

[27]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 53 line 20 thru p. 54 line 11, p. 64 lines 4-25.

[28]Id. at 64 lines 18-25. In his deposition Plaintiff gave conflicting statements about whether the MCOP representative spoke to the operator of the crane. At one point Plaintiff stated that the MCOP representative gave the crane operator step-by-step instructions. Id. at 70 line 5 thru p. 71 line 21. However, when asked again whether the MCOP representative said anything to the crane operator, Plaintiff stated that he did not recall. Id. at 71 line 17 thru p. 72 line 2.

[29]Id. at 100 line 17 thru p. 101 line 5.

[30]MCOP's MSJ, Docket Entry No. 26, p. 9.

whether the crane operator was operating the crane in an unsafe manner while pulling the tubing from the well.  Plaintiff states that the crew had multiple discussions about the unsafe manner in which the crane operator was operating and that Henry pulled the crane operator to the side during the shift to discuss safety.[31] However, Sonnier and Henry state that (1) they do not recall the crane operator operating in an unsafe manner and (2) they do not recall discussing the crane operator with other crew members or the crane operator himself.[32]

Sometime after midnight on the morning of August 9, 2024, the crew brought the bridge plug onto the deck to begin the plugging operations.[33]  To connect the plug to the wireline unit (which was connected to the crane), a retainer had to be screwed on to the top of it.[34]  When the Crescent crew screwed the retainer on to the plug, they did so in a cross-threaded fashion.[35]  Plaintiff saw that the plug was cross-threaded and asked Magee to complete another

---

[31]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 48 lines 14–19, p. 78 lines 8-17.

[32]Henry Depo, Exhibit 3 to MCOP's MSJ, Docket Entry No. 26-3, p. 60 lines 2-20; Sonnier Depo, Exhibit 5 to MCOP's MSJ, Docket Entry No. 26-5, p. 41 lines 14-24.

[33]MCOP's MSJ, Docket Entry No. 26, pp. 9-10 ¶ 7; Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 65 line 13 thru p. 66 line 5.

[34]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 66 lines 8-23.

[35]Id. at 103 line 12 thru p. 104 line 2.

JSA.[36]    However, Magee ultimately chose not to and instead instructed the wireline operator to lift the plug.[37]

After the cross-threaded plug had been lifted off the deck, the crew decided it needed to be lowered back down.[38]    The crew initially decided that they would unscrew the plug from the retainer after it was set down on the deck.[39]    However, while the plug was still suspended in the air, Magee instructed crew members, including Plaintiff, to unscrew the plug from the retainer.[40]    While the crew was unscrewing the plug from the retainer, the plug fell off, injuring Plaintiff's hand.[41]

## II.    **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[36]Id. at 106 lines 21–24.

[37]Id. at 106 line 21 thru p. 108 line 5.  The parties dispute whether the crane operator or the wireline operator lifted the plug.  Id. at 108 lines 4-5 (stating the crane operator picked up the plug); Sonnier Depo, Exhibit 5 to MCOP's MSJ, Docket Entry No. 26-5, p. 44 lines 2-17 (wireline).

[38]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 108 lines 9-13.

[39]Id.; George Peoples' Deposition ("Peoples Depo"), Exhibit 6 to MCOP's MSJ, Docket Entry No. 26-6, p. 40 line 17 thru p. 41 line 10, p. 43 lines 15-19.

[40]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 107 lines 1-17; Peoples Depo, Exhibit 6 to MCOP's MSJ, Docket Entry No. 26-6, p. 40 lines 17 thru p. 41 line 10, p. 43 lines 15-19.

[41]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 107 lines 1-17, p. 114 lines 5-12.

P. 56(a).  A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  Id. at 2554.  "The burden shifts to the non-moving party to show, with competent evidence, the existence of a genuine dispute of material fact."  Miller v. Michaels Stores, Inc., 98 F.4th 211, 216 (5th Cir. 2024).  "'The burden on the nonmoving party is not a heavy one; the nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.'"  Swope v. Columbian Chemicals Co., 281 F.3d 185, 197 (5th Cir. 2002) (quoting 10A Wright, Miller & Kane, Federal Practice and Procedure § 2727, at 490 (3d ed. 1998)).[42]  But "'[a] mere scintilla of evidence is insufficient to present a question for the jury.'"  Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc., 80 F.4th 607, 616 (5th Cir. 2023).

---

[42]See also 10A Wright, Miller, & Kane, Federal Practice & Procedure § 2727.2, at 501 (4th ed. 2016) (same).

The court "must view all facts and draw all reasonable inferences in [the nonmovant's] favor." Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, 129 S. Ct. 846, 851 n.2 (2009) (internal quotation marks omitted). The court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

## III.  Applicable Law

The court has jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). See 43 U.S.C. § 1349(b)(1) (granting jurisdiction over disputes arising out of or in connection with the exploration, development, or production of minerals on the outer Continental Shelf). In actions brought under the OCSLA "federal law governs . . . to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate federal law." Bartholomew v. CNG Producing Co., 862 F.2d 555, 557 (5th Cir. 1989); see also 43 U.S.C. § 1333(a)(2)(A).

Because the platform is located in Green Canyon Block 184, which is adjacent to the shore of Louisiana, Louisiana law governs.[43] See Snyder Oil Corp. v. Samedan Oil Corp., 208 F.3d 521, 524 (5th Cir. 2000); Strong v. B.P. Exploration & Production, Inc., 440 F.3d 665, 668 (5th Cir. 2006).

---

[43]MCOP's MSJ, Docket Entry No. 26, p. 5; Sparrows' MSJ, Docket Entry No. 25, p. 10 ¶ 13; Plaintiff's Response, Docket Entry No. 29, p. 6.

## IV.  **Analysis**

Plaintiff asserts claims of ordinary negligence against MCOP and Sparrows.[44]

Louisiana's ordinary negligence scheme is stated in Article 2315 of the Louisiana Civil Code.  To recover under Article 2315, Plaintiff must establish:  "(1) the defendant[s] had a duty to conform [their] conduct to a specific standard (the duty element); (2) the defendant[s'] conduct failed to conform to the appropriate standard (the breach element); (3) the defendant[s'] substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant[s'] substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)."  Audler v. CBC Innovis Inc., 519 F.3d 239, 249 (5th Cir. 2008) (citing Lemann v. Essen Lane Daiquiris, 923 So.2d 627, 633 (La. 2006)).

MCOP argues that it is not liable for Plaintiff's injuries because it is not vicariously liable and because it did not owe Plaintiff a duty as a matter of law.[45]  Sparrows argues that there are no fact issues as to whether it owed Plaintiff a duty, whether

---

[44]Original Petition, Exhibit 1 to Notice of Removal, Docket Entry No. 1-1, pp. 4-5; Plaintiff's Response, Docket Entry No. 29, p. 11.

[45]MCOP's MSJ, Docket Entry No. 26, p. 16 ¶ 17.

it breached its duty, or whether it caused Plaintiff's alleged injuries.[46]

## A.    MCOP's Motion for Summary Judgment

Plaintiff argues that MCOP is liable for his injuries because it is vicariously liable for the negligence of its independent contractors.[47]    Plaintiff also argues that MCOP is liable for failing to warn Plaintiff of the hazards on deck.[48]    MCOP argues that it is entitled to summary judgment because of its status as a principal and because it has no duty to warn of an open and obvious hazard.[49]

### 1.    Vicarious Liability

Under Louisiana law, "a principal . . . cannot be liable for injuries resulting from the negligent acts of an independent contractor . . . unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."    Coulter v. Texaco, Inc., 117 F.3d 909, 911–12 (5th Cir. 1997).    MCOP argues that it is entitled to summary judgment because

---

[46]Sparrows' MSJ, Docket Entry No. 25, pp. 10–16 ¶¶ 16–30.

[47]Original Petition, Exhibit 1 to Notice of Removal, Docket Entry No. 1-1, pp. 4–5 ¶ 1.

[48]Id. at 5 ¶ 1.p.

[49]MCOP's MSJ, Docket Entry No. 26, p. 5 ¶ II.2., pp. 23–24 ¶¶ 26–28.

there is no fact issue as to whether it retained operational control over the plug operations or whether the plugging operations were ultrahazardous.[50]

### a.   Operational Control

A principal is liable for injuries resulting from the negligent acts of an independent contractor when "the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." Id. at 912.  "Testing for this operational control exception first requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal." Id.

MCOP did not contractually reserve the right to control Crescent's work.  The MCOP/Crescent MSC contract states that (1) "the actual performance and superintendence of all work . . . shall be by [Crescent],"[51] (2) "[Crescent] shall act as and be an Independent Contractor free and clear of any dominion or control by [MCOP] in the manner in which said services are to be performed,"[52] (3) "[Crescent] is required to furnish or have his employees, if any, furnish necessary tools, supplies, or materials to perform the work of service,"[53] and (4) "[Crescent] shall be solely responsible

---

[50]Id. at 5-6.

[51]Master Service Contract, Exhibit 4 to MCOP's MSJ, Docket Entry No. 26, p. 5 ¶ 4.1.

[52]Id. ¶ 4.2.

[53]Id. ¶ 4.2(c).

-12-

for compliance with all rules and regulations."[54]   The MSC makes clear that MCOP did not contractually reserve the right to control Crescent's work.  This weighs heavily in favor of finding that MCOP did not retain operational control.  See Coleman v. BP Exploration & Production, Inc., 19 F.4th 720, 730 (5th Cir. 2021).

Moreover, MCOP did not expressly or impliedly authorize the action taken by its independent contractors during the plugging operations.  Operational control exists when the principal retains such a "right of supervision that the contractor is not entirely free to do the work in his own way."  LeJeune v. Shell Oil Co., 950 F.2d 267, 270 (5th Cir. 1992) (quoting Landry v. Huthnance Drilling Co., 889 F.2d 1469, 1471 (5th Cir. 1989)).  "[A]bsent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable under the operational control exception."  Coulter, 117 F.3d at 912.

The record establishes that MCOP did not instruct Crescent how to complete the plug operations.  The JSA regarding the plug operations was created by Sparrows.[55]  Jarred Henry, a Crescent employee, discussed the step-by-step process for plugging the well with the crew at the pre-safety meeting.[56]  Crescent employees

---

[54]Id. ¶ 3.1.

[55]Henry Depo, Exhibit 3 to MCOP's MSJ, Docket Entry No. 26-3, p. 24 lines 7–25.

[56]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 53 lines 14-22, p. 59 lines 17-21, p. 64 lines 4-11.

screwed the retainer on to the plug.[57]  Magee, a Crescent employee, instructed the crew to lift the cross-threaded plug in the air.[58] He also instructed the crew to unscrew the plug from the retainer while it was still suspended in the air.[59]  There is no evidence that MCOP gave instructions about the plugging operations.  In fact, nobody from MCOP was present on the deck while the plugging operations were taking place.[60]

Plaintiff argues that there is a genuine issue of material fact as to whether MCOP had operational control over the plugging operations because MCOP (1) had a person in charge on the platform, (2) was present at the JSA meeting, and (3) instructed the Crescent crew to work safely and to plug the well when they were finished pulling the pipe.[61]  But these facts to do not create a fact issue

---

[57]Id. at 103 line 12 thru p. 104 line 2.

[58]Id. at 107 lines 1–17, p. 108 lines 1–18; Peoples Depo, Exhibit 6 to MCOP's MSJ, Docket Entry No. 26-6, p. 40 line 17 thru p. 41 line 10, p. 43 lines 15–19.

[59]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 107 lines 1–18, p. 108 lines 1–18; Peoples Depo, Exhibit 6 to MCOP's MSJ, Docket Entry No. 26-6, p. 40 line 17 thru p. 41 line 10, p. 43 lines 6–19.

[60]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 100 line 17 thru p. 101 line 5.

[61]Plaintiff's Response, Docket Entry No. 29, pp. 8–10. Plaintiff also argues that an MCOP representative "told the crane operator everything that needed to be done." Id. at 9; Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 64 lines 18-25. However, Plaintiff misrepresents his own testimony.  When asked whether the MCOP representative gave specific instructions to the crane operator, Plaintiff stated that he did not recall.  Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 71 line 16 thru p. 72 line 2.

-14-

as to whether MCOP controlled the step-by-step process of the plug operation.  See Coleman, 19 F.4th at 730–31 (holding that the principal did not have a duty as a matter of law despite the fact that the principal gave work priorities, required compliance with their safety rules, determined the equipment to be used and issued, and influenced when to begin the work); Parkman v. W&T Offshore, Inc., 673 F.Supp.3d 811, 821 (M.D. La. 2023) (citing Coleman, 19 F.4th at 731) ("[A]n operator's approval of a JSA does not ordinarily subject it to operational control liability.").

The court concludes that there is no evidence that MCOP retained operational control over the plugging operations.

### b.    Ultrahazardous Condition

Plaintiff argues that the plugging operations were ultrahazardous because they included "a dangerous crane operator."[62]

An activity is ultrahazardous when it "'can cause injury . . . even when conducted with the greatest prudence and care.'"

---

[62]Plaintiff's Response, Docket Entry No. 29, pp. 7–8.  Relying on Dobbs v. Gulf Oil Co., 759 F.2d 1213, 1219 (5th Cir. 1985), Plaintiff also argues that evidence of a defective crane precludes summary judgment.  In Dobbs a plaintiff slipped and fell on hydraulic fluid that had leaked from a crane.  Id. at 1215.  The plaintiff filed suit against Gulf, the owner of the platform, under a strict liability theory.  Id.  After a jury found for the plaintiff, Gulf appealed, arguing that the evidence on the issue of a defect in the crane was insufficient to present a jury question. Id. at 1215, 1219.  The Fifth Circuit held that the testimony on the condition of the crane was sufficient to present a jury question on the issue of a defect in the crane.  Id. at 1219. Because Dobbs deals with whether a crane was defective under a strict liability theory, it has no bearing on whether the plugging operations were an ultrahazardous condition or whether summary judgment is appropriate.

Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 550 (5th Cir. 1987) (quoting Kent v. Gulf States Utilities Co., 418 So.2d 493, 498 (La. 1982)).  In other words, "[t]he 'ultrahazardous' label is thus limited to those activities which present a 'risk of harm that cannot be eliminated through the exercise of due care.'" Triplette v. Exxon Corp., 554 So.2d 1361, 1363 (La. App. 1st Cir. 1989) (quoting O'Neal v. International Paper Co., 715 F.2d 199, 202 (5th Cir. 1983)).  Examples include "pile driving, storage of toxic gas, blasting with explosives, and crop dusting" with airplanes. Ainsworth, 829 F.2d at 549.

Although Plaintiff argues that the plugging operations were conducted negligently because of the alleged unsafe practices of the crane operator, Plaintiff does not cite to any evidence that establishes that the plugging operations, even when conducted with the greatest prudence and care, could cause injury.  Instead, the record establishes that Plaintiff's injury could have been avoided had he followed basic safety practice — "i.e, not working under a suspended load known to be defectively made up and therefore in danger of breaking free and falling."[63]  Ainsworth, 829 F.2d at 550.

Accordingly, Plaintiff has failed to raise an issue of fact that the plugging operations were ultrahazardous.  See Triplette, 554 So.2d at 1363 (holding that although the plaintiff improperly was using his safety belt while repairing cooling towers, because the activity "is routinely performed at great heights (in this case

---

[63]MCOP's Reply, Docket Entry No. 30, pp. 3-4.

fifty feet) with the proper safety equipment and due care, th[e] activity is one which can be performed safely without great risk of injury").

Because there is no fact issue as to whether MCOP retained operational control over the plugging operations or whether the plugging operations were ultrahazardous, Plaintiff cannot establish that MCOP is vicariously liable for his injuries.

### 2.   Ordinary Negligence

MCOP argues that Plaintiff cannot establish that MCOP is liable for his injuries because the cross-threaded plug was an open and obvious hazard.[64]   Plaintiff argues that the court cannot grant summary judgment even if it or a jury finds that the cross-threaded plug was an open and obvious hazard because such a finding does not bar recovery.[65]

Under Louisiana law, "[a] landowner owes a plaintiff a duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence."   Bross v. Chevron U.S.A.,

---

[64]MCOP's MSJ, Docket Entry No. 26, pp. 23–24 ¶¶ 26-28.

[65]Plaintiff's Response, Docket Entry No. 29, p. 10.   Plaintiff relies on Farrell v. Circle K Stores, Inc., 359 So.3d 467 (La. 2023) and Bearden v. K & A of Monroe, LLC, 399 So.3d 515 (La. Ct. App. 2d Cir. 2024), to argue that summary judgment is precluded here.   Id. However, Plaintiff's reliance on these cases is misplaced.   Farrell and Bearden do not preclude summary judgment.   Farrell reversed the district court's decision to deny summary judgment and rendered judgment in favor of the defendant under an open and obvious theory, and Bearden affirmed the lower court's decision to grant summary judgment in favor of the defendants under an open and obvious theory.   Farrell, 359 So.3d at 479-80; Bearden, 399 So.3d at 525.

Inc., 649 F.Supp.2d 517, 522 (W.D. La. 2009).  However, a defendant only has a duty to protect against defects that are unreasonably dangerous, not those that are open and obvious.  Simon v. CenturyLink, Inc., 340 So.3d 88, 91 (La. Ct. App. 1st Cir. 2021). Louisiana courts have developed a "risk-utility balancing test to determine whether a condition is unreasonably dangerous."    Id. "The four pertinent factors to be considered in the risk-utility balancing test are:  (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities are dangerous by nature." Id. (citing Bufkin v. Felipe's Louisiana, LLC, 171 So.3d 851, 856 (La. 2014)).[66]  "'In order for a hazard to be considered open and obvious [under the second prong], the Louisiana Supreme Court has consistently stated that the hazard should be one that is open and obvious to all, ie., everyone who may potentially encounter it.'" George v. ABC Insurance Company, 351 So.3d 447, 454 (La. Ct. App. 4th Cir. 2022) (citing Scarberry v. Entergy Corp., 136 So.3d 194, 204 (La. Ct. App. 4th Cir. 2014)).  "In deciding a motion for

---

[66]Because the record is void of evidence regarding the utility of the complained of condition, the cost of preventing the harm, and the nature of plaintiff's activities in terms of social utility, the court finds that these factors do not weigh heavily as a consideration in determining whether the cross-threaded plug was an unreasonably dangerous condition.  See Farrell, 359 So.3d at 474-79.

-18-

summary judgment under Louisiana law, 'the court <u>can</u> decide that a condition does not present an unreasonable risk of harm, as a matter of law.'" <u>Mayet v. Energy XXI Gigs Services, L.L.C.,</u> CIVIL ACTION CASE NO. 17-9568, 2019 WL 4415274, at *7 (E.D. La. Sept. 16, 2019) (quoting <u>Martin v. Boyd Racing, L.L.C.,</u> 681 F. App'x 409, 412 (5th Cir. 2017)) (emphasis in original).

The evidence establishes that all of the crew who encountered the cross-threaded plug understood that it was dangerous.  Everyone could tell that the plug was cross threaded just by looking at it. Both Plaintiff and Sonnier stated that they knew that the plug was cross-threaded upon sight.[67]  Moreover, the evidence establishes that the entire crew knew that the cross-threaded plug was dangerous because it could fall at anytime.  Plaintiff admits this in his deposition, and according to Sonnier's deposition, Sonnier even attempted to use his stop-work authority when he saw that the plug was cross-threaded because of the dangers it posed to the crew who were standing nearby.[68]  The evidence clearly establishes that the entire deck crew could see that the plug was cross-threaded just by looking at it and that they knew the cross-threaded plug was dangerous because it could fall at anytime.

---

[67]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 106 lines 16-21, p. 185 lines 8-19; Sonnier Depo, Exhibit 5 to MCOP's MSJ, Docket Entry No. 26-5, p. 75 lines 7-12, p. 78 lines 4-16.

[68]<u>Id.</u>

Plaintiff offers no evidence that the cross-threaded plug was not an open and obvious hazard.  Instead, Plaintiff argues that the court cannot grant summary judgment solely on a finding that a hazard is open and obvious.[69]  However, the Louisiana Supreme Court has made clear that there is no limit on summary judgment in cases involving issues of whether a hazard is open and obvious.  <u>Edmison v. Caesars Entertainment Company, Inc.</u>, 177 F.Supp.3d 972, 978 (E.D. La. 2016) (discussing <u>Allen v. Lockwood</u>, 156 So.3d 650, 651 (La. 2015)).

Because MCOP has produced evidence that the cross-threaded plug was an open and obvious hazard and because Plaintiff has failed to produce any evidence that rebuts MCOP's evidence, the court finds that there is no genuine issue of material fact as to whether the cross-threaded plug was an open and obvious hazard.  <u>See</u> <u>Allen</u>, 156 So.3d at 653 (holding that summary judgment is appropriate in cases involving whether a hazard is open and obvious when the plaintiff fails to offer rebuttal evidence).  Accordingly, Plaintiff cannot establish that MCOP is liable for his injuries.

## B.    Sparrows' Motion for Summary Judgment

Plaintiff argues that Sparrows is liable for his injuries because its crane operator handled the suspended plug in an unsafe manner and failed to stop the operation once it became unsafe.[70]

---

[69]Plaintiff's Response, Docket Entry No. 29, p. 10.

[70]<u>Id.</u> at 13.

Sparrows argues that it is entitled to summary judgment because there are no fact issues as to whether it owed a duty to Plaintiff, breached its duty, or caused Plaintiff's alleged injuries.[71]

Sparrows argues that it did not owe Plaintiff a duty because it did not employ, share a contract, or actually supervise Plaintiff and because Crescent, not Sparrows, instructed Plaintiff to unscrew the plug while it was suspended in the air.[72]  Plaintiff argues that Sparrows owes him a duty of ordinary care.[73]

An independent contractor does not owe a special duty to protect the employee of another independent contractor. McCarroll v. Wood Group Management Services, Inc., 561 F. App'x 407, 410 (5th Cir. 2014) (per curiam).  Instead, "[o]ne independent contractor owes another independent contractor at least 'the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition.'" Id. (citing Lafont v. Chevron, U.S.A., 593 So.2d 416, 420 (La. App. 1st Cir. 1991)).  The Fifth Circuit "has also recognized that, in determining whether one independent contractor owes a duty to another independent contractor's employee [under Louisiana law], relevant considerations are whether one independent contractor employs, shares a contract with, or

---

[71]Sparrows' MSJ, Docket Entry No. 25, pp. 10–16.

[72]Id. at 12–14 ¶¶ 20–23.

[73]Plaintiff's Response, Docket Entry No. 29, pp. 12–13.

supervises the other's employee." <u>Fornah v. Schlumberger Technology Corporation</u>, 737 F. App'x 677, 681 (5th Cir. 2018) (per curiam).

Crescent and Sparrows were both independent contractors on the project.[74] There is no evidence that Sparrows employed or had a contractual agreement with Plaintiff or Crescent. MCOP hired Sparrows as an independent contractor to perform crane operations;[75] it was not Sparrows' responsibility to supervise the employees of the co-independent contractor, Crescent.

Moreover, an independent contractor does not have "a duty to keep other company's employees from committing unsafe work practices." <u>Skinner v. Schlumberger Technology Corp.</u>, Civil Action No. 13-03146, 2015 WL 4253986, at *8 (W.D. La. July 13, 2015) (citing <u>Joyner v. Ensco Offshore Co.</u>, No. CIV. A. 99-3754, 2001 WL 118599, at *4 (E.D. La. Feb. 9, 2001)). In <u>Skinner</u> a crane operator employed by an independent contractor was reeling in hydraulic power hoses. 2015 WL 4253986, at *1. During the reeling process a hose was caught between the gangway and the platform. <u>Id.</u> However, the crane operator continued to reel the hoses in. <u>Id.</u> The plaintiff, who was employed by a different independent contractor, attempted to tell the crane operator to stop. <u>Id.</u> When the crane operator failed to stop the plaintiff pushed the

---

[74]<u>Id.</u> at 5.

[75]MCOP's MSJ, Docket Entry No. 26, p. 9.

hose over the handrail to dislodge it despite knowing it was unsafe to do so.  Id. at *1, *8.  The plaintiff filed suit against the crane operator's employer, arguing that the crane operator was negligent for operating the crane unsafely and for failing to stop the reeling process.  Id. at *7.  The court held that the crane operator's employer had no duty that "encompassed the risk that [the plaintiff] would be injured performing an action that [the plaintiff] himself, an experienced tubing worker, chose to perform."  Id. at *8.  In reaching its decision, the court noted that (1) the crane operator's employer had not "assume[d] any role of authority or supervision over [the plaintiff] . . . when he was injured," (2) the plaintiff is the one who made the decision to push the hose off the gangway, and (3) the plaintiff had specialized knowledge of the hose.  Id.  The Fifth Circuit affirmed the district court's decision to grant summary judgment in favor of the crane operator's employer.  Skinner v. Schlumberger Technology Corp., 655 F. App'x 188, 193 (5th Cir. 2016) (per curiam) ("We agree that any duty [the crane operator's employer] may have owed to [the plaintiff] did not encompass the risk that [the plaintiff] would injure himself by performing an admittedly unsafe action that he voluntarily undertook without any direction to do so from [the crane operator's employer].  Thus, summary judgment was appropriate.").

Sparrows' duty does not encompass the risk that Plaintiff would injure himself by performing an admittedly unsafe action that

he voluntarily undertook without any direction to do so from Sparrows. Like the independent contractor in Skinner, Sparrows did not have authority over Plaintiff. At all relevant times to this suit, Crescent personnel instructed the crew on the step-by-step process for plugging the well.[76] Like the independent contractor in Skinner, Sparrows did not instruct Plaintiff or any of the Crescent crew to unscrew the cross-threaded plug while it was suspended in the air. It was Magee, a Crescent employee, who made the decision to do so.[77] And like the plaintiff in Skinner, despite having years of experience plugging and abandoning wells, Plaintiff here chose to follow Magee's instructions to unscrew the cross-threaded plug while it was suspended in the air.[78] Plaintiff made that choice despite understanding that the cross-threaded plug could have fallen at any moment solely because it was cross-threaded[79] and despite having stop-work authority.[80]

---

[76]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 65 line 15 thru p. 67 line 21, p. 106 line 21 thru p. 108 line 5; Peoples Depo, Exhibit 6 to MCOP's MSJ, Docket Entry No. 26-6, p. 40 lines 17 thru p. 41 line 10, p. 43 lines 15-19.

[77]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 106 line 21 thru p. 108 line 5; Peoples Depo, Exhibit 6 to MCOP's MSJ, Docket Entry No. 26-6, p. 40 line 17 thru p. 41 line 10, p. 43 lines 6-19.

[78]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 107 lines 8-17, p. 185 lines 8-19, p. 201 line 23 thru p. 202 line 3; MCOP's MSJ, Docket Entry No. 26, p. 23 ¶ 26.

[79]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 185 lines 8-19. Plaintiff's testimony establishes that even if
(continued...)

Because Sparrows did not employ, share a contract with, or supervise Plaintiff and because Plaintiff chose to place his hands under a suspended load, Plaintiff cannot establish that Sparrows is liable for his injuries.

## V.  Conclusion and Order

For the reasons explained above, Plaintiff's negligence and gross negligence claims against MCOP and Sparrows fail as a matter of law.  Accordingly, Defendant MC Offshore Petroleum, LLC's Motion for Final Traditional Summary Judgment and Incorporated Memorandum of Law (Docket Entry No. 26) and Defendant Sparrows Offshore, LLC's Motion for Summary Judgment (Docket Entry No. 25) are **GRANTED**.

The court will enter a final judgment in favor of Defendants.

**SIGNED** at Houston, Texas, on this the 8th day of June, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[79]Jones Depo, Exhibit 1 to MCOP's MSJ, Docket Entry No. 26-1, p. 185 lines 8-19.  Plaintiff's testimony establishes that even if the crane was being operated in an unsafe manner, the cross-threaded plug was at risk of falling at any given moment solely because it was cross-threaded.  Id.

[80]Id. at 202 lines 18-25.